```
 1                 UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
 2                      Alexandria Division

 3

 4    UNITED STATES OF AMERICA,      :    Criminal Case
                                     :    No. 1:23-CR-00119-TSE-1
 5                    Plaintiff      :
                                     :
 6         v.                        :      **INCLUDES SEALED
                                     :          PORTION**
 7    CONOR BRIAN FITZPATRICK,       :
                                     :    July 23, 2023
 8                    Defendant      :    5:00 p.m.
      ............................   :    ......................
 9
                        TRANSCRIPT OF PLEA HEARING
10                     ** INCLUDES SEALED PORTION **
                     BEFORE THE HONORABLE T.S. ELLIS, III
11                      UNITED STATES DISTRICT JUDGE

12
         APPEARANCES:
13
         FOR THE PLAINTIFF:         AARASH HAGHIGHAT
14                                  LAUREN POMERANTZ HALPER
                                    UNITED STATES ATTORNEY'S OFFICE
15                                  EASTERN DISTRICT OF VIRGINIA
                                    2100 Jamieson Avenue
16                                  Alexandria, VA  22314
                                    703-299-3700
17
         FOR THE DEFENDANT:         PETER KATZ
18                                  LAW OFFICES OF PETER KATZ
                                    116 Village Blvd.
19                                  2nd Floor
                                    Princeton, NJ  08540
20                                  609-200-0596

21                                  NINA J. GINSBERG
                                    DiMURO GINSBERG, P.C.
22                                  1001 N. Fairfax Street
                                    Suite 510
23                                  Alexandria, VA  22314
                                    703-684-4333
24
                                    (APPEARANCES CONTINUED ON
25                                  FOLLOWING PAGE:)
```

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*

1

**OFFICIAL COURT REPORTER:**      **REBECCA STONESTREET, RPR, CRR**
2                                  **U.S. District Court, 9th Floor**
                                   **401 Courthouse Square**
3                                  **Alexandria, Virginia  22314**
                                   **(240) 426-7767**

4

5                           **( Pages 1 - 75)**

6

7          **COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2           COURTROOM CLERK:  Court calls criminal case United
 3   States of America versus Conor Brian Fitzpatrick, case
 4   Number 2023-CR-119.
 5           May I have appearances, please, first for the
 6   government.
 7           MR. HAGHIGHAT:  Your Honor, Aarash Haghighat on behalf
 8   of the government.  And I'm here with Lauren Halper.
 9           THE COURT:  All right.  And who is here for the
10   defendant?
11           MS. GINSBERG:  Good afternoon, Your Honor.
12   Nina Ginsberg and Peter Katz for Mr. Fitzpatrick.  Mr. Katz is
13   his primary counsel.  He's been admitted *pro hac vice* in the
14   magistrate court.  He's admitted to the bars of the states of
15   New York and New Jersey, and a number of District Courts in both
16   states, Pennsylvania, and the U.S. Supreme Court.
17           May I introduce him to Your Honor.
18           THE COURT:  Thank you.  Good afternoon, Ms. Ginsberg
19   and Mr. Katz.
20           MR. KATZ:  Good afternoon, Your Honor.
21           THE COURT:  Nice to see you again, Ms. Ginsberg.
22           MS. GINSBERG:  Thank you, Your Honor.  You too.
23           THE COURT:  And Mr. Haghighat, good afternoon, sir.
24           MR. HAGHIGHAT:  Good afternoon.
25           THE COURT:  All right.  And Mr. Fitzpatrick is present
```

1     in the courtroom.  Good afternoon to you, sir.

2              THE DEFENDANT:  Good afternoon, Your Honor.

3              THE COURT:  Now, who else is in the courtroom here?

4              MR. HAGHIGHAT:  Your Honor, this is Mr. Fitzpatrick's

5     father, and we have personnel from the FBI.

6              THE PROBATION OFFICER:  The probation officer.

7              (OFF THE RECORD.)

8              THE COURT:  Again, good afternoon to all of you.  And I

9     understand Mr. Fitzpatrick is here to plead guilty to a criminal

10    information charging him with engaging in a conspiracy to commit

11    access device fraud and unauthorized solicitation of access

12    device fraud, possession of child pornography.

13             Those are the three claims, or three charges?

14             MR. HAGHIGHAT:  Yes, Your Honor.

15             THE COURT:  All right.  Now, Mr. Fitzpatrick, come to

16    the podium, please, sir.  Mr. Fitzpatrick, I'm going to have you

17    placed under oath because I'm going to ask you a series of

18    questions designed to enable me to determine from the answers

19    that you give whether your plea of guilty to these charges in

20    the criminal information is a knowing and a voluntary plea; that

21    is, that you understand the nature of the charges to which

22    you're intending to plead guilty, that you understand the

23    penalties or punishments that may result from your pleading

24    guilty to these charges, and that you understand all the rights

25    you'll be giving up by pleading guilty to those charges.  And,

1    understanding all of that, that the answers you give will enable

2    me to determine whether you're pleading guilty freely,

3    willingly, and voluntarily.

4         You may administer the oath to Mr. Fitzpatrick.

5         (Oath administered by courtroom deputy clerk.)

6         THE COURT:  Mr. Fitzpatrick, do you understand, sir,

7    that you are now under oath, and if you answer any of the

8    Court's questions falsely, you may be prosecuted for perjury or

9    for making a false statement?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Mr. Fitzpatrick, I am advised that you are

12   here today intending to plead guilty to three charges against

13   you in the criminal information.  Is that correct?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  Do you understand that those three

16   charges -- let me review those with you.  The first is engaging

17   in a conspiracy to commit access device fraud, in violation of

18   Sections 1029, and 3559 of Title 18.  Have you discussed that

19   charge with your attorney?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  And are you fully satisfied with the advice

22   and counsel Mr. Katz has provided to you in this case?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  The second charge that I understand you

25   intend to plead guilty to is access device fraud, unauthorized

1       solicitation, in violation of Sections 1029(a)(6) and Section 2.

2               Have you discussed that charge with Mr. Katz?

3               THE DEFENDANT:  Yes, Your Honor.

4               THE COURT:  And finally, possession of child

5       pornography, in violation of 2252(a)(4)(B) and (b)(2), have you

6       discussed that charge with Mr. Katz?

7               THE DEFENDANT:  Yes, Your Honor.

8               THE COURT:  And I take it -- let me ask you again, are

9       you satisfied with the advice and counsel you've received from

10      him?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  Let me ask, Mr. Fitzpatrick, you understand

13      that all of those charges are serious felony offenses?

14              THE DEFENDANT:  Yes.

15              THE COURT:  And ordinarily the government could not

16      proceed against you on such serious felony charges without first

17      obtaining an indictment - that is, an accusation against you -

18      by a grand jury.  Do you understand that?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  Have you discussed your right to compel the

21      government to proceed against you by way of an indictment

22      against you with Mr. Katz?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  Do you understand that if you insist on

25      having the government proceed by way of a grand jury indictment

1    on these charges in the criminal information, that the

2    government would then have to present evidence to a grand jury,

3    and the grand jury would have to find that it was more likely

4    than not that these offenses were committed, and that you

5    committed them, before a grand jury would indict you on these

6    charges?

7            Do you understand that?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  And do you understand that a grand jury is

10   composed of at least 16 and not more than 23 persons, and if you

11   insisted on having the government proceed by way of a grand jury

12   indictment, the government, as I said, would have to present

13   evidence to a grand jury.  Do you understand that?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  And do you understand that at least 12

16   members of the grand jury would have to find that there was

17   probable cause to believe that you committed the crimes before

18   an indictment would issue?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  Do you wish to waive your right to have the

21   government proceed solely by way of a grand jury indictment on

22   these charges against you?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  You do?

25           THE DEFENDANT:  Yes.

```
 1                    THE COURT:  All right.  What is your full name?

 2                    THE DEFENDANT:  Conor Brian Fitzpatrick.

 3                    THE COURT:  What is your age?

 4                    THE DEFENDANT:  20.

 5                    THE COURT:  What is the highest grade in school that

 6      you've completed?

 7                    THE DEFENDANT:  12th grade.

 8                    THE COURT:  And where did you complete the 12th grade?

 9                    THE DEFENDANT:  Peekskill High School.

10                    THE COURT:  Peekskill High School?

11                    THE DEFENDANT:  Uh-huh.

12                    THE COURT:  Is that in New York?

13                    THE DEFENDANT:  Yes, Your Honor.

14                    THE COURT:  And did you attend college or university?

15                    THE DEFENDANT:  I attended two semesters, Your Honor.

16                    THE COURT:  Where?  You'll have to speak up.

17                    THE DEFENDANT:  At Westchester Community College.

18                    THE COURT:  And what did you study there?

19                    THE DEFENDANT:  Computer science.

20                    THE COURT:  Have you had any formal education since

21      that time?

22                    THE DEFENDANT:  No, Your Honor.

23                    THE COURT:  Do you have any difficulty reading and

24      writing English?

25                    THE DEFENDANT:  No, Your Honor.
```

1              THE COURT:  Let me ask you again, do you wish to waive

2      your right to compel the government to proceed by way of a grand

3      jury indictment on these charges against you in the criminal

4      information?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Do you know of any reason why he should not

7      waive that right, Mr. Katz?

8              MR. KATZ:  I do not, Your Honor.

9              THE COURT:  The Court in the case of United States

10     versus Conor Brian Fitzpatrick finds that the defendant is fully

11     competent and capable of waiving his right to compel the

12     government to proceed by way of a grand jury indictment on these

13     felony charges against him, and that his waiver of that right is

14     knowing and voluntary.

15             He may now execute the waiver of indictment form here

16     in open court.  If he has previously signed it, have him initial

17     it.

18             MR. KATZ:  He has not previously signed it.

19             THE COURT:  All right.  Sign the waiver of indictment

20     form, please, sir, and I will add my signature to it.

21             Now, Mr. Fitzpatrick, let me ask you again, have you

22     read the charges against you in the criminal information?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Do you understand that in Count I of the

25     criminal information, you are charged as follows:  That from at

1    least in or around March 2022 through on or about March 15,

2    2023, in the Eastern District of Virginia and elsewhere, that

3    you knowingly and with the intent to defraud combined,

4    conspired, confederated, and agreed with other members of the

5    website known as BreachForums, including BreachForums moderators

6    and vendors, to commit and aid and abet the commission of

7    knowingly to -- and with intent to defraud, to traffic in and

8    use one or more unauthorized access devices during a one-year

9    period, to wit, payment card data, bank routing and account

10   numbers, Social Security numbers, and log-in credentials,

11   including surnames -- usernames and associated passwords

12   intended to be used to access certain online accounts provided

13   by account issuers and other entities in the United States.

14   And, by such conduct, to obtain things of value aggregating a

15   thousand dollars or more during that period; said conduct

16   affecting interstate and foreign commerce, in violation of

17   Title 18, Sections 1029(a)(2).

18            And the second object of the conspiracy is, without the

19   authorization of the issuers of access devices, knowingly and

20   with intent to defraud to solicit a person for the purpose of

21   selling unauthorized access devices, to wit, payment card data,

22   bank routing and account numbers, and Social Security numbers,

23   log-in credentials, including usernames and associated passwords

24   intended to be used to access online accounts provided by

25   account users and other entities in the United States, said

1    conduct affecting interstate and foreign commerce, in violation

2    of Title 18, U.S. Code Section 29(a)(6) and (2).

3         And it was further a part of the conspiracy that you

4    and your co-conspirators knowingly and falsely registered domain

5    names, including breached.vc, breached.to -- I can't read all of

6    it, but it's a long -- breachforums.net, .com, and .org domain

7    names in the course of committing the offense charged in

8    Count I.

9         Do you understand that's the charge against you in

10   Count I of the information?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  And do you understand that the charge

13   against you in Count II of the information is that from in or

14   about June 28, 2022, through on or about July 6, 2022, in the

15   Eastern District of Virginia and elsewhere, that you knowingly

16   and with intent to defraud did aid and abet the solicitation of

17   a person for the purposes of offering unauthorized access

18   devices, as defined by 18 U.S.C., Sections 1029(e)(1) and

19   (e)(3), to wit, bank account and routing numbers and

20   Social Security numbers, and solicitation affecting interstate

21   and foreign commerce, in that the solicitation occurred via the

22   internet and between computers located inside the

23   Commonwealth of Virginia and computers located outside of the

24   Commonwealth of Virginia, in violation of Title 18, U.S. Code,

25   Sections 1029(a)(6) and Section 2.

1          Do you understand that's what you're charged with in

2     Count II; namely, unauthorized access device fraud, unauthorized

3     solicitation?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And in Count III, Mr. Fitzpatrick, you're

6     charged as follows:  That on or about March 15, 2023, in the

7     Southern District of New York, that you knowingly possessed and

8     attempted to possess at least one matter containing one or more

9     visual depictions that had been transported using a means and

10    facility of interstate and foreign commerce, and in and

11    affecting interstate and foreign commerce; and which visual

12    depictions were produced using materials which had been mailed

13    and so shipped and transported by any means, including by

14    computer; and the production of such visual depictions involved

15    the use of a minor engaging in sexually explicit conduct; and

16    such visual depictions were such conduct, to wit, videos

17    depicting prepubescent minors and minors who had not obtained

18    the age of 12 years engaging in sexually explicit conduct,

19    stored on a Dell Inspiron 5593 laptop computer with a

20    Samsung 870 QVO solid state drive, all in violation of Title 18

21    U.S. Code, Section 2252(a)(4)(B) and Section (b)(2).

22         So do you understand that that's what you're charged

23    with in Count III; namely, possession of child pornography,

24    Mr. Fitzpatrick?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.  Mr. Fitzpatrick, it's important

2    that you understand what all of these charges, what the possible

3    penalties or punishments are if the Court accepts your pleas of

4    guilty.

5          For Count I, do you understand that the maximum penalty

6    for Count I is 10 years imprisonment, a fine of up to $250,000,

7    full restitution, forfeiture of assets as outlined in the plea

8    agreement, and three years of supervised release to follow any

9    period of incarceration.  And if you were to violate any of the

10   conditions of supervised release while you're on supervised

11   release, you could be returned to prison for the full supervised

12   release term.

13         So do you understand those are the penalties or

14   punishments, if the Court accepts your plea, with respect to

15   Count I?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  With respect to Count II, similarly, the

18   maximum penalties for solicitation for the purpose of offering

19   access devices are 10 years in prison, a fine of up to $250,000,

20   full restitution to any victims of the offense, forfeiture of

21   assets as outlined in the plea agreement, and a $100 special

22   assessment.  There's also a $100 special assessment for the

23   first count.  And three years of supervised release.

24         And again, if you were to violate any of the conditions

25   of supervised release while you were on supervised release, you

1    could be returned to prison for the full supervised release
2    term.
3         Do you understand that all of those are punishments or
4    possible punishments that may result from your pleading guilty
5    to Count II of the information?
6         THE DEFENDANT:  Yes, Your Honor.
7         THE COURT:  Now, with respect to Count III of the
8    information - that is, possession of child pornography - the
9    maximum penalty is 20 years imprisonment, a fine of up to
10   $250,000, full restitution to any victims of the offense, and a
11   minimum supervised release term of five years to a maximum of
12   life.
13        And again, if you were to violate any of the conditions
14   of supervised release while you were on supervised release, you
15   could be returned to prison for the full supervised release
16   term.
17        Do you understand, Mr. Fitzpatrick, that all of those
18   are punishments or possible punishments that may result from
19   your pleading guilty to Count III; that is, the possession of
20   child pornography count?
21        THE DEFENDANT:  Yes, Your Honor.
22        THE COURT:  Mr. Fitzpatrick, you have a plea agreement
23   and a statement of facts that it appears you have signed.  Did
24   you read those documents?
25        THE DEFENDANT:  Yes, I did, Your Honor.

```
 1                  THE COURT:  And did you consult with Mr. Katz, your
 2      attorney, with respect to each of those documents?
 3                  THE DEFENDANT:  Yes, I did, Your Honor.
 4                  THE COURT:  I'm going to have the court security
 5      officer hand you what appear to be your plea agreement and
 6      statement of facts which you signed.  I want you to look at them
 7      and tell me whether they are -- so look at these.  Look first at
 8      the plea agreement.
 9                  Is that your plea agreement, Mr. Fitzpatrick, that you
10      conferred with Mr. Katz about and signed after you read it?
11                  THE DEFENDANT:  Yes, it is, Your Honor.
12                  THE COURT:  Does your signature on the plea agreement
13      signify, again, that you have read it and that you understand
14      it, and you agree to the terms and conditions of the plea
15      agreement?
16                  THE DEFENDANT:  Yes, it does, Your Honor.
17                  THE COURT:  Look now at your statement of facts.  Is
18      that the statement of facts that you read, conferred with your
19      counsel on, and signed?
20                  THE DEFENDANT:  Yes, Your Honor.
21                  THE COURT:  And does your signature appearing on the
22      statement of facts signify that you have read the statement of
23      facts and you agree that it is true and accurate in all
24      respects?
25                  THE DEFENDANT:  Yes, I did, Your Honor.
```

1          THE COURT:  All right.  Return those to the bench,

2    please.

3          Now, Mr. Fitzpatrick, I'm going to summarize the

4    essential terms of your plea agreement.  Pay careful attention

5    to my summary, because at the conclusion I will ask you whether

6    those are the terms of your plea agreement with the government

7    as you understand it.

8          Under the plea agreement, you've agreed to plead guilty

9    to a three-count criminal information charging you with

10   conspiracy to commit access device fraud in Count I, and in

11   Count II with solicitation for the purpose of offering access

12   devices, and in Count III with possession of child pornography.

13         And then the plea agreement recites, as I just did a

14   few minutes ago, what the maximum penalties are for each of

15   those crimes.  First, the maximum penalty for conspiracy to

16   commit access device fraud in Count I is 10 years in prison, a

17   fine of up to $250,000, full restitution to any victims of the

18   offense, forfeiture of assets, a $100 special assessment, and

19   three years of supervised release.

20         And then the maximum penalties for solicitation for the

21   purpose of offering access devices are 10 years of imprisonment,

22   a fine of up to $250,000, full restitution, forfeiture of assets

23   as outlined in the plea agreement, and three years of supervised

24   release to follow any period of incarceration.

25         And the plea agreement then goes on to note that the

1    maximum penalty for possession of child pornography is 20 years

2    in prison, a fine of up to $250,000, full restitution to any

3    victims of the offense, forfeiture of assets as outlined in the

4    plea agreement, and the special assessment pursuant to statute,

5    and a minimum supervised release term of five years and a

6    maximum of life.

7           And the plea agreement notes that on all of the

8    supervised release terms, if you were to violate any of the

9    conditions of the supervised release, you could be returned to

10   prison for the full supervised release term.

11          The plea agreement goes on, Mr. Fitzpatrick, and

12   provides that you are representing that you're pleading guilty

13   to these charges because you're in fact guilty.  You admit the

14   facts set forth in the statement of facts, and you agree that

15   those facts establish your guilt of the charged offenses beyond

16   a reasonable doubt.  And the statement of facts is incorporated

17   and will be the basis for the calculation of your sentencing

18   guideline range.

19          I will point out for counsel that Paragraph 2 in the

20   plea agreement is fairly standard, and it should have been,

21   however, carefully read and it should be in the plural rather

22   than the singular.  It's charges, not charge.  Do you see what

23   I'm referring to?

24          MR. HAGHIGHAT:  Yes, Your Honor.

25          THE COURT:  In the future, read these carefully.  The

1    fact that you use well accepted language is fine, but it needs

2    to be suitable for the precise case.

3         The plea agreement goes on, Mr. Fitzpatrick, and

4    provides that you're satisfied that Mr. Katz has rendered

5    effective assistance to you in this case, and that you

6    understand that by entering into the plea agreement, you're

7    giving up your right to a jury trial.  And then the plea

8    agreement sets out what those rights are in very brief shorthand

9    fashion, and I'll review those with you in greater detail in a

10   few minutes.

11        The plea agreement goes on, Mr. Fitzpatrick, and

12   provides that you understand that the Court has the power to

13   impose any sentence on you up to the statutory maximum for these

14   offenses, but that your sentence hasn't yet been imposed.  Your

15   sentence is uncertain at this time, what sentence you will

16   actually receive.  Any estimate of a sentence you receive from

17   Mr. Katz or from the government or from anyone, those are merely

18   estimates.  They are not promises, they are not assurances.

19   Indeed, the government specifically notes that it makes no

20   promise or representation to you concerning what sentence you

21   will actually receive.

22        And the plea agreement also notes that the sentencing

23   guidelines are one factor for the Court to take into account.

24   They are not mandatory as they once were.

25        The plea agreement goes on to provide that you and the

1    government have agreed to recommend to the Court -- they're

2    merely recommendations.  I'm not bound by the recommendations.

3    I could reach a different result.  But you and the government

4    have agreed to recommend to the Court that for Counts I and II,

5    the offense level should be 6, plus 2 for 10 or more victims,

6    and plus 2 for if the offense involves receiving stolen

7    property, and plus 2 if there was intentional use of

8    sophisticated means, and another plus 2 for trafficking of

9    unauthorized access devices, and another plus 2 if the offense

10   involved the unauthorized public dissemination of personal

11   information, and a plus 4 if defendant -- if you were an

12   organizer or leader of a criminal activity that involved five or

13   more participants, and another plus 2 under 3559(g)(1).

14           What is that for, Mr. Katz or -- let me ask the

15   government, what's that for?

16           MR. HAGHIGHAT:  False domain registration.

17           THE COURT:  Oh, yes, domain name registration.  All

18   right.

19           So that would be a total of 22 in the recommendation.

20   In other words, you and the government have agreed to recommend

21   that the total offense level would be 22, less acceptance of

22   responsibility.  And the government has also agreed to file a

23   motion under acceptance of responsibility for an additional

24   level.

25           And you also have agreed to recommend to the Court that

1    your offense level should be increased by at least 14 levels

2    because the loss foreseeably resulting from your offenses

3    exceeded 550,000, and the plea agreement notes that the

4    government reserves the right to argue at sentencing that the

5    Court should increase the offense level by more than 14 levels.

6    The defendant reserves the right to oppose any further increases

7    to the offense level, but the government and the defendant agree

8    that it should be increased by 14 levels, at least.

9           MR. HAGHIGHAT:  Yes, Your Honor.

10          THE COURT:  And then, with respect to Count III - that

11   is, the possession of child pornography - the government and the

12   defendant agree to recommend to the Court that the base offense

13   level should be 18, with two levels added because prepubescent

14   minors - that is, minors who have not attained the age of

15   12 years - were involved; and another two levels for the use of

16   a computer for receipt, distribution, or transmission of the

17   material; and another five levels for the offense involving 600

18   or more images, for a total of 27.

19          And you and the government in the plea agreement have

20   agreed to recommend jointly to the Court that the Court treat

21   the offenses of conviction charged in Counts I and II as one

22   group of closely related counts, and the offense of conviction

23   charged in Count III as a second group of closely related

24   counts, pursuant to Section 3D1.2.

25          And you and the government have also agreed to

1    recommend to the Court that if you qualify for a two-level

2    decrease for acceptance of responsibility, then the government

3    will file a motion for an additional level of credit for

4    acceptance of responsibility owing to your prompt decision to

5    plead guilty.

6         And apart from those that I've mentioned, the plea

7    agreement notes that you and the government have not agreed on

8    any further sentencing issues other than those specifically set

9    forth in the plea agreement.

10        And the plea agreement also notes that stipulation on

11   the guideline provision does not limit the parties' arguments as

12   to any other guidelines provisions or sentencing factors under

13   3553(a), including arguments for a sentence within or outside

14   the advisory guideline range.

15        The plea agreement goes on to provide that you

16   understand that venue for Count III lies in the

17   Southern District of New York, and that you can't be compelled

18   to answer that charge in the Eastern District of Virginia.

19   Nonetheless, you've agreed to waive venue and consent to being

20   charged by criminal information with this offense in the

21   Eastern District of Virginia.

22        So the plea agreement goes on, Mr. Fitzpatrick, and

23   provides that you understand that the law entitles you a right

24   to appeal the sentence imposed, but you, here in your plea

25   agreement, waive the right to appeal your convictions and any

1    sentence within the statutory maximum described in this case, or

2    on any ground whatsoever other than an ineffective assistance of

3    counsel claim cognizable on direct appeal.

4           In other words, Mr. Fitzpatrick, in your plea agreement

5    you're waiving your right to appeal your conviction and your

6    sentence on these three charges on any ground other than an

7    ineffective assistance of counsel claim cognizable on direct

8    appeal.

9           And you also waive any rights you would have to request

10   or receive from any department or agency of the United States

11   any records that may be sought under the Freedom of

12   Information Act or any other provision.

13          And the government has agreed that it will not

14   prosecute you further in the Eastern District of Virginia for

15   the specific conduct described in the information or statement

16   of facts.  The plea agreement and statement of facts do not

17   confer any immunity on you.

18          Here's another problem.  If you look at that provision,

19   you've got a verb/subject disagreement.  Do you see that?  "The

20   plea agreement and statement of facts do not," not "does not."

21   Do you see that?

22          MR. HAGHIGHAT:  Yes, Your Honor.

23          THE COURT:  Read these things before you submit them.

24          The plea agreement goes on to provide that any monetary

25   penalties imposed by the Court at sentencing would be due and

1    payable immediately, and subject to immediate enforcement by the

2    government.  In other words, the government could obtain a

3    judgment and collect on that immediately.

4         And if you're incarcerated, you've agreed in your plea

5    agreement to participate voluntarily in the Bureau of Prisons

6    inmate financial responsibility program, regardless of whether

7    the Court specifically orders it.  And you've agreed to make

8    good faith efforts to the payment of all monetary penalties.

9         The plea agreement continues and notes that you've

10    agreed to pay a mandatory special assessment of $100 per count

11    of conviction.  So that's $300.  And you further understand and

12    agree that pursuant to the law, if the Court should find that

13    you are a non-indigent, that you are not indigent, the Court

14    shall impose an additional special assessment of $5,000 on you,

15    per count of conviction, for each offense listed in

16    Section 3014(a).

17         That would be Counts I and II, would it not?

18         MR. KATZ:  I believe that's Count III.

19         MR. HAGHIGHAT:  It's Count III, I believe.

20         THE COURT:  III, Count III.  However, the plea

21    agreement notes that that special assessment shall not be

22    payable until defendant has satisfied all outstanding court

23    orders, ordered fines, orders of restitution, and any other

24    obligation related to victim compensation.

25         You further understand and agree, in addition to any

1    other penalties or restitution authorized by law, the Court will

2    impose on you any applicable special assessments per count of

3    conviction for each offense listed in 2259(a), after considering

4    the factors set forth in the statute, up to a maximum of $17,000

5    as to Count III.

6         However, imposition of an assessment under 2259(a) does

7    not relieve defendant of or entitle defendant to reduce the

8    amount of any other penalty by the amount of the assessment.

9    And any money received from the defendant must be disbursed

10   based on the sequence listed in the law.

11        Now, the plea agreement continues, Mr. Fitzpatrick, and

12   provides that you understand and agree that restitution is

13   mandatory under the law, and you've agreed to the entry of a

14   restitution order for the full amount of the victims' losses, as

15   those losses are defined in the law.

16        You also agree that victims of the conduct described in

17   the charging instrument, statement of facts, or any other

18   related or similar conduct are victims within the meaning of

19   2259(c) of Title 18, and are entitled to restitution.  And you

20   understand and agree that pursuant to 2259(b)(2)B, the Court

21   must order restitution to each victim in an amount not less than

22   $3,000.

23        And you also agree in the plea agreement that

24   restitution is mandatory under the law, and you agree to entry

25   of a restitution order for the full amount of the victims'

1      losses as determined by the Court.

2           And you also agree that an offense listed in

3      3663(a)(C)(1) gave rise to this plea agreement, and, as such,

4      victims of the conduct described in the charging instrument,

5      statement of facts, or any related or similar conduct, shall be

6      entitled to restitution.

7           And the plea agreement goes on and notes that the

8      parties acknowledge that determination of the identities,

9      addresses, and loss amounts for the victims is a matter that is

10     complicated and time-consuming.  To that end, you've agreed that

11     the Court may defer imposition of restitution until after

12     sentencing.  However, defendant specifically waives the 90-day

13     provision found in the law, and consents to the entry of any

14     orders pertaining to restitution after sentencing, without

15     limitation.

16          The plea agreement continues, Mr. Fitzpatrick, and

17     provides that you understand and agree that the forfeiture of

18     assets is part of the sentence that must be imposed in this

19     case, and you've agreed to forfeit all proceeds that you and

20     your co-conspirators received from your participation in the

21     crimes charged in the information, which you and the government

22     agree amounts to at least $698,714.

23          And you further agree to forfeit all interests in any

24     child pornography-related and fraud-related assets that the

25     defendant used or over which the defendant exercises control,

1    directly or indirectly.  This includes any properties traceable

2    to, derived from, fungible with, or a substitute for the

3    property that constitutes the proceeds of the offense, and

4    property used or involved in the offense, including all crypto

5    currency, fiat currency, domain names, and computers and

6    electronic media specified in the forfeiture notice in the

7    criminal information and the consent forfeiture order.

8         And you understand that if assets subject to forfeiture

9    are not available to be forfeited, the Court is required by law

10   to enter a forfeiture money judgment in the amount of all

11   unavailable assets.  And you've agreed to waive all interest in

12   the assets in any administrative or judicial forfeiture

13   proceeding, whether in criminal, civil, state, or federal.  And

14   you've agreed to consent to the entry of orders of forfeiture

15   for such property, and you waive requirements of the

16   Federal Rules requiring notice of the forfeiture in the charging

17   instrument and announcement of forfeiture at sentencing and

18   incorporation of the forfeiture in the judgment.

19        And the plea agreement goes on to provide that you've

20   agreed to waive all constitutional and statutory challenges to

21   any forfeiture carried out in accordance with this plea

22   agreement.

23        You've also agreed to take all steps as requested by

24   the government to pass clear title to the government of any

25   forfeitable assets, and to testify truthfully in any judicial

1    forfeiture proceedings.  And you understand and agree that all

2    property covered by this agreement is subject to forfeiture as

3    proceeds of illegal conduct and property used or involved in the

4    offense.

5         And you've agreed to participate fully in the

6    government's pre and post-judgment financial investigation,

7    including the identification of assets in which you have any

8    legal or equitable interest, to determine which assets may be

9    available for payment or restitution, forfeiture, and/or any

10   fine imposed in the case.  You've also agreed that your

11   financial information is subject to investigation and disclosure

12   prejudgment to the same extent as financial information will be

13   subject to discovery after judgment is imposed.

14        And you understand that the government is entitled to

15   obtain your credit report after sentencing, and you expressly

16   authorize the government to obtain the credit report prior to

17   sentencing.  And you've also agreed that if the government

18   determines that it will obtain your credit report prior to

19   sentencing, the defendant authorizes the government, and the

20   government agrees to provide a copy to defense counsel upon

21   request.

22        The defendant understands that failure to participate

23   in a financial investigation as described in the plea agreement

24   may constitute a failure to accept responsibility under the

25   guidelines.

1            Within 14 days of a request by the government, the

2      defendant has agreed to provide all information about all of

3      defendant's assets and financial interests to the government and

4      the probation office.  And you've agreed to undergo a polygraph

5      examination on your assets if the government chooses to

6      administer it.  And you've also agreed to complete a financial

7      disclosure statement under penalty of perjury.

8            You also have agreed to provide or consent to the

9      release of your tax returns for the last five years, and you

10     understand that assets and financial interests subject to

11     disclosure include assets owned or held, directly or indirectly,

12     individually or jointly, in which you have any legal interest,

13     regardless of title, including interest held or owned under any

14     other name, trust, or business entities presently and since the

15     date of the first offense giving rise to this plea agreement, or

16     giving rise to the charges presently pending against the

17     defendant, whichever is earlier.

18           You've also agreed to identify all assets valued at

19     more than $5,000 transferred to third parties since the date of

20     the first offense giving rise to this plea agreement.  And

21     you've also agreed not to transfer any assets valued at more

22     than $5,000 without the approval of the asset recovery unit of

23     the U.S. Attorney's Office until the fine, forfeiture, and

24     restitution ordered by the Court are paid in full or otherwise

25     terminated by operation of law.

1          You've also agreed to take all steps, as requested by

2    the government, to obtain from other parties, such as banks, by

3    any lawful means, any records of assets contemplated by this

4    paragraph.

5          The government has agreed that it won't use any

6    truthful information that you provide, any complete information

7    that you provide pursuant to the plea agreement for additional

8    criminal offenses against the defendant in the Eastern District

9    of Virginia, except in the prosecution for a crime of violence

10   or conspiring to commit a crime of violence or aiding and

11   abetting a crime of violence.

12         And no truthful information that you provide pursuant

13   to the obligations under the plea agreement will be used in

14   determining the applicable guideline range, except as provided

15   in the guidelines under Section 1D1.8B.

16         Is that the relevant conduct provision, counsel for the

17   government?

18         MR. HAGHIGHAT:  I believe so, yes, Your Honor.

19         THE COURT:  It is.  All right.

20         Well, the plea agreement makes clear that nothing in

21   the agreement restricts the court's or probation officer's

22   access to records in the possession of the United States, and

23   nothing in the agreement prevents the United States in any way

24   from prosecuting defendant should the defendant knowingly

25   provide false, untruthful, or perjurious information or

1    testimony, or from using information provided by the defendant

2    in furtherance of any forfeiture action or restitution and

3    enforcement action, whether criminal, civil, administrative, or

4    judicial.

5          The plea agreement, Mr. Fitzpatrick, continues and says

6    that you have been advised and you understand that under the Sex

7    Offender Registration and Notification Act, you have to register

8    and maintain the currency of such registration as a sex offender

9    in each of the following jurisdictions:

10         Where you live - that is, reside - where you work -

11    that is, where you're employed - or where you are a student -

12    that is, where you are studying in a program.  And you

13    understand that the requirements for registration include

14    providing true residence and names and addresses of any places

15    where you are or will be an employee or a student.

16         And you also understand that the requirement to

17    maintain the accuracy or currency of the registration requires

18    informing at least one jurisdiction in which you reside or are

19    an employee or a student not later than three business days of

20    any change of your name, residence, employment, or student

21    status.  And the failure to comply with these Sex Offender

22    Registration Notification Act obligations would subject you to

23    prosecution which is punishable by a fine or imprisonment or

24    both.

25          **(The following proceedings were HELD UNDER SEAL:)**

1          THE COURT:  The plea agreement continues and provides

2     that you've agreed to cooperate fully and truthfully, fully and

3     completely with the United States, and provide the government

4     with all information that you know about regarding any criminal

5     activity, not just that that's involved in this case.  But if

6     you know about any criminal activity, you're obligating yourself

7     to disclose that to the government.

8          Specifically, you're agreeing to testify truthfully and

9     completely at any grand juries, trials, or other proceedings.

10    You've agreed to be reasonably available for debriefings and

11    pretrial conferences that the government may require.  You've

12    also agreed to provide all documents, records, writings, or

13    other materials of any kind in your possession or control or

14    care to the government.

15         You've also agreed that at the request of the

16    government, you'll submit voluntarily to a polygraph, a lie

17    detector test, and that the government will choose the polygraph

18    examiner and specify the procedures for the examination.

19         The plea agreement continues that the statement of

20    facts that you've submitted, together with the plea agreement to

21    support the plea, is limited to information to support the plea,

22    and that you'll provide additional facts and details during your

23    debriefings.  And the plea agreement also notes that while

24    you're cooperating with the government, the government is not

25    obligated to seek your cooperation.

1          And the plea agreement notes that if you violate any

2     state, local, or federal law while you're cooperating with the

3     government, you are not privileged to do so simply because

4     you're cooperating.  You have no privilege to violate state,

5     local, or federal law.  And if you do so, then the government

6     may, in its discretion, consider any such violation in

7     determining and evaluating whether to file a motion for a

8     downward departure reduction of your sentence owing to your

9     cooperation.

10          The plea agreement goes on to provide that the

11     government agrees not to use truthful information that you

12     provide under the plea agreement in any criminal prosecution

13     against you in the Eastern District of Virginia.  The only

14     exception to that is any prosecution for a crime of violence or

15     conspiring to commit or aiding and abetting a crime of violence.

16          And no truthful information that the government -- or

17     that you provide, the defendant provides under this agreement,

18     will be used in determining the guideline range, except as

19     provided in Section 1D1.8B.

20          The plea agreement goes on to provide that the

21     U.S. Attorney's Office in the Eastern District of Virginia

22     agrees that it will not contact any other state or federal

23     prosecuting jurisdiction and voluntarily turn over truthful

24     information that you provide under the agreement to aid the

25     prosecution of defendant in that jurisdiction.

```
 1              And if any other prosecuting jurisdiction attempts to
 2     use truthful information that you provide under this agreement
 3     against you, then the U.S. Attorney's Office in this district,
 4     the Eastern District of Virginia, agrees, on request, to contact
 5     that jurisdiction and request that jurisdiction to abide by the
 6     immunity provisions of this agreement.  And, as the agreement
 7     notes, however, the parties understand - that is, the defendant
 8     and the government understand - that the prosecuting
 9     jurisdiction retains the discretion over which to use such
10     information.
11              Now, in order for you to satisfy your cooperation
12     obligation, Mr. Fitzpatrick, the plea agreement provides that it
13     is not conditioned on any charges being brought against any
14     individual.  In other words, in order for you to satisfy your
15     cooperation obligation, it isn't necessary that someone be
16     caught, prosecuted, and convicted on the basis of information
17     that you provide.  All that's necessary in order for you to
18     satisfy your cooperation obligation is for you to provide full,
19     complete, and truthful cooperation.
20              And the plea agreement also notes, as the law provides,
21     that it's within the government's sole discretion whether to
22     seek any departure from the applicable sentencing guideline
23     range pursuant to Section 5K1.1 of the sentencing guidelines, or
24     any reduction of sentence pursuant to Rule 35 of the Federal
25     Rules of Criminal Procedure.
```

1          In other words, if you cooperate with the government,

2     Mr. Fitzpatrick, as you're obligated to do, and you provide

3     information to the government that you think should be of

4     substantial assistance to the government, but the government

5     disagrees with your assessment of the value of that information

6     either because they don't believe it or because they don't --

7     they have it from other sources or they don't think it's

8     reliable, or for whatever reason they disagree with your

9     assessment, you can't force the government to bring a motion for

10    reduction of sentence.  Because that's within the sole

11    discretion of the government, as the plea agreement notes.

12         And the plea agreement notes, if you violate any of the

13    terms of the plea agreement and the government seeks to be

14    released from its obligations, if the Court releases the

15    government from its obligations under the plea agreement, then

16    the government will be free to prosecute you for any offense it

17    knows about, including what is in the criminal information.  And

18    in doing so, the government will be able to use against you all

19    of the information it's obtained from you, including the

20    statement of facts, and you will not be able to rely on any

21    statute, rule, or constitutional provision to suppress the use

22    of that information.

23         And the plea agreement finally notes that it's the

24    complete agreement between you and the government concerning

25    your plea of guilty, and that there aren't any other secret

 1    arrangements or side arrangements concerning your plea, and that

 2    you acknowledge that no threats, promises, or representations

 3    nor agreements reached, other than those set forth in the plea

 4    agreement, have been made.  In other words, that you haven't

 5    been coerced in any way.

 6            **(END SEALED PORTION.)**

 7            Now, Mr. Fitzpatrick, are those the terms of your plea

 8    agreement with the government that I've summarized?

 9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Are all of the understandings that you have

11    with the government concerning your pleas of guilty in this case

12    contained in the plea agreement?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  Has anyone made any other or different kind

15    of promise or assurance to you of any kind whatsoever in order

16    to persuade you to plead guilty, other than what's in the plea

17    agreement?

18            THE DEFENDANT:  No, Your Honor.

19            THE COURT:  Now, you'll be sentenced under the law,

20    Mr. Fitzpatrick, that provides that the sentencing guidelines

21    are now advisory, not mandatory, as they once were.  Have you

22    and Mr. Katz discussed how the sentencing guidelines applies to

23    your case?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  Or might apply to your case?  Do you

1     understand?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Now, you and the government have entered

4     into an agreement to make certain recommendations to the Court

5     as to how some of the guidelines might apply to your case.  Do

6     you recall that?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Now, do you understand that binds you and

9     it binds the government, but that agreement does not bind the

10    Court.  I could reach a different result.

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  And do you understand that the Court hasn't

13    yet determined what guideline range applies to your case with

14    respect...

15           (OFF THE RECORD.)

16           THE COURT:  Do you understand that the Court has not

17    yet determined what guideline range applies to your case?  Do

18    you understand that that must await the completion of a

19    presentence report, which I will order prepared, and you'll

20    receive a copy, as will Mr. Katz and the government.  And you'll

21    have an opportunity to register your objections or corrections

22    to the report, and the government will as well.  Do you

23    understand that?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  And then, if you and the government

1    disagree about the guideline calculations, I'll hold a hearing,
2    and at the conclusion of the hearing I will rule on those issues
3    before sentence is imposed.  Do you understand that?
4              THE DEFENDANT:  Yes, Your Honor.
5              THE COURT:  And do you understand that even after I
6    determine what guideline range applies to your case, then, under
7    certain circumstances, the Court has the authority to impose a
8    sentence that is either less severe than the guideline range or
9    more severe than the guideline range, but never greater than the
10   statutory maximum for the offenses involved.  Do you recall
11   that?
12             THE DEFENDANT:  I do, Your Honor.
13             THE COURT:  And for Count I, the maximum was 15 years.
14             MR. KATZ:  10, Your Honor.
15             THE COURT:  10 years.  For Count II, it was 10 years,
16   and for Count III it was?
17             MR. HAGHIGHAT:  20.
18             THE COURT:  20 years.  Do you recall that?
19             THE DEFENDANT:  Yes, Your Honor.
20             THE COURT:  And if the sentence you ultimately receive,
21   Mr. Fitzpatrick, is more severe than the sentence you now expect
22   as you stand here this afternoon, you will still be bound by
23   your plea and your plea agreement, and you will have no right to
24   withdraw them.  Do you understand that?
25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Mr. Fitzpatrick, you have an absolute right

2     to plead not guilty and to persist in that plea.  And if you do

3     so, you have the right to a trial by jury.  Do you understand

4     that?

5          THE DEFENDANT:  I do, Your Honor.

6          THE COURT:  Now, incident to your right to a trial by

7     jury, you have all of the following rights:

8          First, you would have the right to the assistance of

9     your counsel, Mr. Katz, throughout all phases of the proceedings

10    against you in this case.

11         Next, you would have the right, in the course of

12    selecting a jury, to strike 10 persons from a panel of

13    prospective jurors for whatever reason you choose, subject only

14    to the constitutional constraint that neither you nor the

15    government may strike any prospective juror solely for reasons

16    of race or gender.

17         Next, you would have the right to see and hear all

18    witnesses and all evidence against you, and to have those

19    witnesses and that evidence cross-examined by your attorney on

20    your behalf.

21         Next, you would have the right, Mr. Fitzpatrick, to

22    testify before the jury, or, if you decide, if you elect to

23    remain silent, you may do so.  And if you elect to remain

24    silent, then the Court will instruct the jury that the jury may

25    draw no inference from your silence.  Indeed, if you elect to

1    remain silent, the Court will instruct the jury that when the

2    jury retires to deliberate on its verdict, the jury may not even

3    discuss the fact that you have not testified, because your right

4    to remain silent is absolute under the Constitution, and you may

5    not be penalized for exercising that right.

6         Next, you cannot be found guilty on these charges, or

7    any one of them, unless all 12 members of the jury are unanimous

8    in concluding that the government has proved beyond a reasonable

9    doubt each and every element of the offense charged against you

10   in this case.

11        And finally, Mr. Fitzpatrick, you would be entitled, as

12   I said, not to be found guilty unless the government has proved

13   beyond a reasonable doubt each and every element of the offense

14   charged against you.  Do you understand all of that?

15        THE DEFENDANT:  I do, Your Honor.

16        THE COURT:  And do you understand that by pleading

17   guilty, you give up all those rights I've listed and there will

18   be no trial at all?

19        THE DEFENDANT:  I do, Your Honor.

20        THE COURT:  So to be more specific, Mr. Fitzpatrick,

21   with respect to Count I, if you persist in a plea of not guilty

22   with respect to Count I of the criminal information, the

23   government would have to prove, first of all, that there was a

24   conspiracy.

25        Now, in order to prove a conspiracy, the government

1    doesn't have to prove that you and others had written agreements

2    about what you were going to do, or even that you had detailed

3    oral agreements about what you were going to do.  But what the

4    government must prove beyond a reasonable doubt is that you and

5    at least one other person had some kind of understanding or

6    arrangement, the purpose of which was to traffic in or with

7    intent to defraud to traffic in, to use one or more unauthorized

8    access devices during a one-year period; or knowingly and with

9    intent to defraud solicit a person for the purpose of selling

10   unauthorized access devices, to wit, payment card data, bank

11   routing, et cetera; or, third, that you knowingly and falsely

12   registered false domain names.

13           So the government would have to prove that you and at

14   least one other person had some kind of understanding or

15   arrangement, the purpose of which, the goal of which was either

16   access device fraud, as I mentioned it to you, or falsely

17   registering domain names.  Do you understand that?

18           THE DEFENDANT:  I do, Your Honor.

19           THE COURT:  And then the government would have to prove

20   with respect to that count also that you did this knowingly, not

21   accidentally, inadvertently, or by accident, but you did it

22   deliberately and knowing what you were doing.

23           The government would also have to prove that with

24   respect to the access online accounts and so forth, and the

25   access devices, that the government would have to prove that it

1       affected interstate and foreign commerce as well.

2               Do you understand that?

3               THE DEFENDANT:  I do, Your Honor.

4               THE COURT:  And do you understand that by pleading

5       guilty, you give up the right to compel the government to prove

6       all of that beyond a reasonable doubt?

7               THE DEFENDANT:  I do, Your Honor.

8               THE COURT:  Now, with respect to -- well, let me ask

9       you, with respect to Count I, did you do what's alleged in

10      Count I, Mr. Fitzpatrick?

11              THE DEFENDANT:  I did, Your Honor.

12              THE COURT:  Tell me in your own words what you did with

13      respect to Count I.  Tell me about what arrangement or

14      understanding you had with others to accomplish the objects in

15      Count I.

16              MR. KATZ:  If we could have just one second,

17      Your Honor.

18              THE COURT:  Yes, you may.

19              (OFF THE RECORD.)

20              THE DEFENDANT:  Could you repeat the question,

21      Your Honor?

22              THE COURT:  Yes.  Tell me in your own words what you

23      did with respect to Count I.  That is, tell me what arrangements

24      or understandings you had with others to accomplish the objects

25      of the conspiracy in Count I.

1          THE DEFENDANT:  I helped someone --

2          THE COURT:  A little louder, please.

3          THE DEFENDANT:  I helped someone sell data that I

4     wasn't authorized to.

5          THE COURT:  You helped someone sell data.  What data?

6          THE DEFENDANT:  I don't remember exactly, Your Honor.

7          THE COURT:  Well, what was the nature of the data?

8          THE DEFENDANT:  Financial data, Your Honor.

9          THE COURT:  So did it involve credit cards and

10    Social Security numbers, log-in credentials?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  All of the above?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Passwords and usernames?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  And did you help or participate in falsely

17    registering domain names?

18         THE DEFENDANT:  I did, Your Honor.

19         THE COURT:  Did those involve the breached and

20    breached.com and .net and all of those?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Now, with respect to Count II,

23    Mr. Fitzpatrick, the government would have to prove that from

24    on -- let me go back to Count I.

25         When did you engage in this conduct?  During what

1    period of time?

2           THE DEFENDANT:  March '22 to March 2023, Your Honor.

3           THE COURT:  And where were you when you committed or

4    when you performed these acts?

5           THE DEFENDANT:  Peekskill, New York.

6           THE COURT:  I didn't hear that.

7           THE DEFENDANT:  Peekskill, New York.

8           THE COURT:  All right.  And were any of the

9    co-conspirators in Virginia?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  What's the contact with Virginia, then?

12          MR. HAGHIGHAT:  Your Honor, through the website they

13   sold data to undercover officers in the Eastern District of

14   Virginia.

15          THE COURT:  And is that true?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Now, with respect to Count II, the

18   government in that case, Mr. Fitzpatrick, would have to show

19   that from on -- that this conduct occurred from June of 2022 to

20   about July 6, 2022.  And the government would have to show that

21   you knowingly, with intent to defraud, did aid and abet

22   solicitation of a person for the purpose of offering

23   unauthorized access devices.

24          Did you do that?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Tell me what you did.

2          THE DEFENDANT:  I helped initiate a trade where an

3     undercover agent bought data off the website.

4          THE COURT:  Now, you understand that, as I said with

5     respect to Count I, that the government would have to prove

6     beyond a reasonable doubt, and then I asked you whether you

7     actually did it.  Do you recall that?

8          THE DEFENDANT:  I do, Your Honor.

9          THE COURT:  Now, with respect to Count II, the

10    government would have to prove that you knowingly and with

11    intent to defraud -- in other words, they would have to show

12    that you didn't do this accidentally or inadvertently or by a

13    mistake, but you did it deliberately, knowing what you were

14    doing, that you intended to defraud by soliciting a person for

15    the purpose of offering unauthorized access devices.

16          Do you understand the government would have to prove

17    all of that beyond a reasonable doubt?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And you understand that by pleading guilty,

20    you're giving up the right to compel the government to prove all

21    of that beyond a reasonable doubt?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Did you do that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Tell me what you did in your own words.

1          THE DEFENDANT:  For Count II, Your Honor?

2          THE COURT:  Yes.

3          THE DEFENDANT:  The same thing as Count I, Your Honor.

4          MR. KATZ:  One second.  Sorry, Judge, if I could have

5    just one second.

6          THE DEFENDANT:  I sold data to an undercover agent.

7          THE COURT:  And did that happen between June of 2022

8    and July of 2022?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Now, with respect to Count III,

11   Mr. Fitzpatrick, the government -- if you persist in a plea of

12   not guilty, the government would have to prove beyond a

13   reasonable doubt that you possessed and attempted to possess

14   child pornography, that is, that you had possession of visual

15   depictions that had been transported in interstate commerce and

16   foreign commerce, that is, by using a computer that involved

17   depictions of a minor -- minors engaged in sexually explicit

18   conduct.  And the government would have to prove all of that

19   beyond a reasonable doubt.

20          And that includes that the government would have to

21   prove that the images were of minors.  In other words, they

22   can't be computer-generated images, they have to be actual

23   images.  And the government would have to prove that, and it has

24   to prove that you possessed and attempted to possess these

25   matters beyond a reasonable doubt.

```
 1                    Do you understand that?

 2                    THE DEFENDANT:  Yes, Your Honor.

 3                    THE COURT:  And that you used a computer.

 4                    THE DEFENDANT:  Yes, Your Honor.

 5                    THE COURT:  And you understand that by pleading guilty,

 6      the government will not have to prove that beyond a reasonable

 7      doubt?

 8                    THE DEFENDANT:  Yes, Your Honor.

 9                    THE COURT:  Did you do what's charged in Count III,

10      Mr. Fitzpatrick?

11                    THE DEFENDANT:  I did, Your Honor.

12                    THE COURT:  Tell the Court in your own words what you

13      did with respect to Count III.

14                    THE DEFENDANT:  Downloading the images and videos off

15      the internet.

16                    THE COURT:  And what did those videos have on them?

17      What did they depict?

18                    THE DEFENDANT:  Child pornography, Your Honor.

19                    THE COURT:  And what do you understand child

20      pornography to be?

21                    THE DEFENDANT:  Persons under the age of 18.  Children

22      under the age of 12, Your Honor.

23                    THE COURT:  And these would be children under the age

24      of 12 engaged in sexually explicit conduct?

25                    THE DEFENDANT:  Yes, Your Honor.
```

```
 1              THE COURT:  All right.  Mr. Fitzpatrick, you may be
 2    seated now.  I'm going to have the government tell the Court
 3    what the government would prove were this matter to go to trial.
 4    Now, listen carefully to what Mr. Haghighat says, because when
 5    he's finished, I'll have you return to the podium and tell me
 6    whether what he has said is true and accurate in all respects.
 7              MR. HAGHIGHAT:  Your Honor, we have a 14-page statement
 8    of facts, and we've also prepared a somewhat shorter summarized
 9    version.  Which would you prefer that we read out today?
10              THE COURT:  Well, it depends on how good your summary
11    is, doesn't it?
12              MR. HAGHIGHAT:  Okay.  Well, if it's okay with
13    Your Honor, let me try the summary, and then if you feel as if
14    we've left something out, we can revisit the full version.  It's
15    still not that abbreviated, the summary.
16              THE COURT:  Go ahead.
17              MR. HAGHIGHAT:  Okay.  Thank you, Your Honor.
18              The United States and the defendant, Conor Brian
19    Fitzpatrick (a/k/a Pompompurin) agree that had this matter
20    proceeded to trial, the United States would have proven the
21    facts set forth in the statement of facts beyond a reasonable
22    doubt with admissible and credible evidence.
23              For the sake of brevity, I'll summarize some of the
24    statements here today.
25              The defendant is a 20-year-old citizen of the
```

1   United States who resides in Peekskill, New York.

2          In March 2022, the defendant, using the online moniker

3   "Pompompurin," created a data breach website named "breached,"

4   that later became widely known a BreachForums, to serve as a

5   replacement for another prominent English-language data breach

6   forum that had been seized by law enforcement.  From at least

7   March 2022 through March 15, 2023, the defendant controlled and

8   acted as a lead administrator of BreachForums with the

9   assistance of others, including an evolving staff of moderators.

10          I'll begin with an overview of BreachForums.

11          While active, BreachForums operated as an illegal

12   marketplace where its members could solicit for sale, sell, and

13   purchase and trade hacked or stolen data and other contraband,

14   including stolen access devices, tools for committing cyber

15   crime, breached databases, and other services for gaining

16   unauthorized access to victims' systems.

17          Among other things, BreachForums enabled its members to

18   post solicitations concerning the sale of hacked or stolen data,

19   exchange direct private messages with prospective buyers and

20   sellers, buy access to certain hacked or stolen data that the

21   platform itself controlled and relating to other services

22   related to the illicit transfer of stolen data and contraband.

23          The purpose of BreachForums, and the defendant's intent

24   in operating the forum, was to commit and aid and abet the

25   trafficking of stolen or hacked databases containing, among

1       other things, access devices and the posting of solicitations to

2       offer databases containing access devices.  In particular, the

3       defendant intentionally ran BreachForums in a manner that made

4       it an attractive marketplace for cyber criminals to frequent in

5       an effort to buy, sell, or trade stolen or hacked access

6       devices.

7              At all relevant times, the defendant knew and

8       understood that the access devices that BreachForums possessed

9       and helped to traffic were stolen or obtained with the intent to

10      defraud, as defined in 18 U.S.C. Section 1029(e)(3).

11             An individual could access the BreachForums website

12      without a membership.  However, the website required an

13      individual to sign up for a membership to solicit items for sale

14      or purchase items.  BreachForums offered tiers of membership

15      options, including a "God" membership that offered almost

16      unlimited access to the BreachForums website and features.

17             BreachForums included a "Marketplace" section that was

18      dedicated to the buying and selling of hacked and stolen data,

19      tools for committing cyber crime, and other illicit material,

20      including a "Leaks Market" subsection.  Some of the items that

21      were often sold in this section included bank account

22      information, Social Security numbers, other personal identifying

23      information or PII, and log-in information for compromised

24      online accounts such as usernames and passwords to access

25      accounts with service providers and merchants.  Paragraph 11 of

1    the statement of facts highlights several examples of

2    solicitations that offered substantial volumes of PII.

3            In addition, to facilitate transactions amongst

4    BreachForums members, the defendant offered a middleman service

5    in which he acted as a trusted middleman or escrow between

6    individuals on the website who sought to buy and sell

7    information.  The defendant's middleman service substantially

8    facilitated and encouraged the dissemination of hacked or stolen

9    data through BreachForums because it enabled purchasers and

10   sellers to verify the means of payment and contraband files sold

11   prior to executing the purchase and sale.  The defendant's

12   standardized middleman process required members to notify him of

13   the product they sought to trade.

14           BreachForums further managed a section titled

15   "Official," which was described on their website as, and I'm

16   quoting here, "forum where databases stored on our own servers

17   are kept."  Official databases were available for purchase on

18   BreachForums' content distribution network, or CDN, through a

19   credit system that the website administered.  Credits were

20   available for purchase on the website or earned through

21   contributing content.  BreachForums members seeking to post

22   databases to the official CDN were required to contact the

23   defendant directly, and the defendant personally approved the

24   upload of databases to the CDN.

25           As of March 27, 2023, the "Official" section purported

1    to contain 880 datasets consisting of over 14 billion individual

2    records.  These databases included a wide variety of both U.S.

3    and foreign companies, organizations, and government agencies.

4         BreachForums had approximately 333,412 members as of

5    March 14, 2023.  It was the largest English-language data breach

6    forum of its kind at the time it went offline.

7         I'll now shift to summarizing the defendant's conduct.

8    The defendant's responsibility in the conspiracy included

9    designing and administering BreachForums' software and computer

10   infrastructure, establishing and enforcing the website's rules,

11   creating and managing sections of the website dedicated to

12   promoting the buying and selling of stolen data, operating a

13   middleman service, approving and uploading breached databases to

14   BreachForums' official CDN, and providing additional assistance

15   to BreachForums members seeking to buy and sell illicit

16   material, including by investigating and sometimes vouching for

17   the authenticity of stolen data.

18        As part of the administration of BreachForums, the

19   defendant also registered a large volume of domains to host or

20   provide access to the BreachForums website.  To obscure his

21   identity, the defendant registered these domains in a manner

22   that prevented the effective identification of him as the person

23   who registered them.

24        The defendant also hired and managed a staff of

25   moderators that helped to ensure BreachForums operated properly

1  and performed traditional administrative functions such as

2  transmitting messages to warn members of conduct that violated

3  BreachForums' rules.  The defendant compensated staff members

4  for acting as moderators.

5        The defendant and co-conspirators gained at least

6  $698,714 through the relevant conduct alleged in Counts I and II

7  of the criminal information.

8        I'll now move to overt acts.  The statement of facts

9  describes a series of overt acts by the defendant, including

10 particular posts announcing the process for uploading data to

11 BreachForums' official CDN and for using his middleman service

12 to conduct transactions.

13       In addition, Paragraphs 23 through 35 detail an example

14 of a customer database from a U.S.-based internet hosting and

15 security services company, defined as Victim-1, that the

16 defendant approved and caused to be uploaded to BreachForums'

17 official CDN.  That solicitation was observed by an FBI online

18 covert employee, or OCE, in the Eastern District of Virginia,

19 who then purchased and downloaded the database into the

20 district.

21       The data included, among other things, customer

22 usernames, password hashes, and credit card information, to

23 include card number, expiration date, and card verification

24 value.

25       Paragraphs 27 through 33 of the statement of facts also

1   describe two examples of transactions that the defendant helped

2   to middleman or facilitate.  In one instance, from July 2022,

3   the defendant middle-manned a transaction between a user,

4   Expo2020, and an FBI OCE in the Eastern District of Virginia in

5   which the OCE paid approximately $5,000 to the user to purchase

6   the PII, including Social Security information and bank account

7   information of approximately 50 million U.S. persons.  This

8   solicitation also serves as the basis for the substantive

9   offense charged in Count II.

10          In another instance from August 2022, the defendant

11  middle-manned a transaction between an FBI OCE in the

12  Eastern District of Virginia and another user named Jigsaw in

13  which Jigsaw sold the FBI credentials for accessing a

14  U.S. health care company accounting system and a sample file

15  that was obtained from the company's accounting system.  The

16  sample data included, among other things, driver's license

17  photos, insurance cards, and the last four digits of credit

18  cards for approximately 13 individuals.

19          In both transactions, the defendant middle-manned the

20  deals after being told by the FBI OCE about the nature of what

21  was being purchased, and of the OCE's claimed plans to use the

22  data or access to conduct financial scams or to obtain money.

23          Further, as explained in more detail in Paragraphs 37

24  through 42, the defendant knowingly possessed approximately 26

25  files in two folders containing visual depictions of minors

1    engaged in sexually explicit conduct on a Samsung 870 QVO

2    4-terabyte solid state driver, SSD.  The defendant used a

3    Samsung SSD with his Dell Inspiron 5593 laptop computer.  These

4    devices were seized from the defendant's home in New York on

5    March 15, 2023, pursuant to a federal search warrant.

6         Many of the 26 files expressly reference names or

7    phrases indicative of child pornography.  In addition, one file

8    named "girl_hebephilia" in the title, and depicted two

9    prepubescent females who, during the video, exposed their

10   genitals to the camera and masturbated.  Forensic artifacts show

11   that the defendant opened this file after he saved it.

12        The Dell Inspiron 5593 laptop computer and the Samsung

13   SSD were manufactured outside the State of New York, and thus,

14   at the time of seizure, had been shipped or transported in

15   interstate or foreign commerce.

16        The actions of the defendant as recounted here were in

17   all respects knowing, voluntary, and intentional, and were not

18   committed by mistake, accident, or other innocent reasons.

19        THE COURT:  All right.  Mr. Fitzpatrick, return to the

20   podium, please, sir.

21        Was that recitation of facts by the prosecutor true and

22   accurate in all respects?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  When I reviewed with you what you did with

25   respect to Count I, how many -- I'm just curious, how many

1      people were involved in BreachForums?

2              THE DEFENDANT:  The website had around 300,000 users.

3              THE COURT:  All right.  About 300,000?

4              MR. KATZ:  If I may, Your Honor, just to make the

5      record clear, are you asking about people who were involved in

6      facilitating BreachForums or members of the forum?

7              THE COURT:  Both.  Is it a different number?

8              MR. KATZ:  Yes, Judge.

9              (OFF THE RECORD.)

10             THE DEFENDANT:  In total there were probably about

11     300,000 people registered on the website, and about five or six

12     people that helped manage the website, Your Honor.

13             THE COURT:  All right.  So the five or six people that

14     helped manage the website were your closest conspirators.  Is

15     that right?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Where were they located?

18             THE DEFENDANT:  I'm not sure, Your Honor.

19             THE COURT:  Because you communicated with them only on

20     the internet?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  All right.  I've asked you whether you find

23     that the prosecutor's summary of the facts was true and

24     accurate.  And what was your answer?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.  Mr. Fitzpatrick, how do you now

2     plead to the offense charged against you in Count I of the

3     information; that is, conspiracy -- engaging in a conspiracy to

4     commit access device fraud?  Do you plead guilty or not guilty?

5          THE DEFENDANT:  Guilty, Your Honor.

6          THE COURT:  The Court in the case of United States

7     against Conor Brian Fitzpatrick finds that the defendant is

8     fully competent and capable of rendering an informed plea, that

9     your plea of guilty is knowing and voluntary, and that it is

10    supported by an independent basis in fact containing each of the

11    elements charged against you.  And accordingly, I adjudge you

12    now guilty of engaging in a conspiracy to commit access device

13    fraud.

14          Now, how do you plead now to the charge against you in

15    Count II; that is, unauthorized solicitation of a person for the

16    purpose of offering unauthorized access devices?  Do you plead

17    guilty or not guilty?

18          THE DEFENDANT:  Guilty, Your Honor.

19          THE COURT:  The Court in the case of United States

20    against Conor Brian Fitzpatrick finds that the defendant is

21    fully competent and capable of entering an informed plea, and

22    that your plea of guilty to Count II of the information - that

23    is, access device fraud, unauthorized solicitation - is knowing

24    and voluntary, and the Court accepts your plea and adjudges you

25    now guilty of engaging in access device fraud and unauthorized

1    solicitation as alleged in Count II of the information.

2            Now let me turn to Count III.  You told me that you --

3    that the summary of the prosecutor of the facts relating to

4    Count III was true and accurate in all respects.  So how do you

5    now plead to the charge against you in the information of

6    possessing child pornography?  Do you plead guilty or not

7    guilty?

8            THE DEFENDANT:  Guilty, Your Honor.

9            THE COURT:  The Court in the case of United States

10   against Conor Brian Fitzpatrick finds that the defendant is

11   fully competent and capable of entering an informed plea, and

12   that his plea of guilty to Count III of the information is a

13   knowing and voluntary plea, and that plea is supported by an

14   independent basis in fact containing each of the elements of the

15   offense.  And accordingly, the Court accepts your plea and

16   adjudges you now guilty of possession of child pornography as

17   alleged in Count III in the information.

18           Mr. Fitzpatrick, the Court will order the preparation

19   of a presentence report.  This is a vitally important document

20   because it's a document on which the Court will chiefly rely in

21   imposing an appropriate sentence.  So you should pay careful

22   attention to the preparation of this document, and indeed you

23   have a role to play in its preparation.

24           You'll be asked by a probation officer to provide

25   information so that the report can be prepared, information

1    about your family, your background, your education, your work

2    experience, your version of the offense conduct, and indeed

3    anything else that might be material in any way to the Court's

4    sentencing decision.  And you may have your counsel with you

5    when you provide that information to the probation officer.

6          When the report is completed, Mr. Fitzpatrick, you'll

7    receive a copy.  So will Mr. Katz.  And you'll have an

8    opportunity to call to the Court's attention any objections or

9    corrections you have to the facts, conclusions, or calculations

10   contained in the presentence investigation report.  The

11   government will also have an opportunity to register its

12   objections or corrections.  And if you dispute those offered by

13   the government or the government disputes those objections or

14   corrections that you offer, then the Court will hold a hearing

15   and resolve the dispute before imposing sentence.

16         At the time of sentencing, Mr. Fitzpatrick, you'll have

17   the right to address the Court, to say anything at all you wish

18   to the Court by way of extenuation, mitigation, or indeed

19   anything you think the Court should know before sentence is

20   imposed.  You won't be required to address the Court, but you

21   will have the opportunity to do so if you wish to.  And, of

22   course, Mr. Katz will also be afforded the opportunity to

23   address the Court on your behalf.

24         I'll set sentencing for November 17th at 9 a.m.  Is

25   that date available?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  Mr. Katz?

3           MR. KATZ:  Yes, I believe so, Your Honor.  I apologize,

4   I don't have my calendar with me, but I think that date will

5   work.

6           THE COURT:  And of course the government is available

7   that day.

8           You may be seated, Mr. Fitzpatrick.

9           Is he currently on conditions?

10          MR. HAGHIGHAT:  Yes, Your Honor.

11          THE COURT:  What are they?  And does the government

12  seek confinement?

13          MR. HAGHIGHAT:  No, we are not seeking detention,

14  although we do want changes to his conditions.  So I believe

15  probation has sent a request for bond modification relating to

16  monitoring of electronic devices that he uses.  I believe that

17  was sent to the Court.  We also have submitted certain

18  particular restrictions as well to add to what

19  Magistrate Judge Fitzpatrick previously imposed.

20          I'm not sure if that has made it to the Court yet, but

21  we have a few additional restrictions that we discussed with the

22  defense that we would like to impose.

23          THE COURT:  I don't have those.  Let me look.  Just a

24  moment.

25          Is the probation officer present in the courtroom?

1           THE PROBATION OFFICER:  Yes, Judge.

2           THE COURT:  The only additional condition that I'm

3    aware of is the one on page 3 of what you submitted to me,

4    "Defendant shall not access a computer and/or the internet

5    unless a computer monitoring program has been installed by

6    Pretrial Services Office," and so on.

7           Is that the only one?

8           THE PROBATION OFFICER:  Yes, Judge.  And I didn't

9    realize until today there was a third count of the child

10   pornography.  Our understanding was it was access device fraud.

11          So because of that third count, Judge, we would also

12   recommend that, as we normally do in child pornography cases,

13   the no contact with minors under age of 18 unless there's a

14   suitable adult present, and also no access to any video gaming

15   console or smart phone unless the computer monitoring is

16   installed.

17          THE COURT:  All right.  Mr. Katz, any objection to

18   those?

19          MR. KATZ:  No.  Our understanding is that any device

20   that Mr. Fitzpatrick will access will be monitored.  We have no

21   objection to that.

22          THE COURT:  All right.  I think that's what was

23   recommended.

24          All right.  Mr. -- yes?

25          MR. HAGHIGHAT:  So we have three additional conditions

1    that would restrict what he does online that we would like to

2    have entered.  I think my colleague sent it to probation

3    yesterday, but it didn't make it to the Court, it seems.  We

4    have an email, written-out version, which I could show

5    Your Honor.

6              THE COURT:  You have a what?

7              MR. HAGHIGHAT:  An email that we sent that writes out

8    the conditions.  Or I could read it out loud.

9              THE COURT:  You didn't send an email to me because I

10   don't allow that and I don't have an email address.

11             MR. HAGHIGHAT:  Yes, Your Honor.  We sent it to

12   probation, which I don't think has made it to you.

13             THE COURT:  Well, we need to have an organized way of

14   being clear about the conditions.

15             So what I'm going to do is I'm going to list all the

16   conditions I'm going to impose on Mr. Fitzpatrick.  I am going

17   to allow him to remain on conditions, and I'm going to state

18   them all.  At the end of that I will ask you first whether you

19   have any additional conditions, then I will ask the defendant

20   whether he objects to anything I've read.  And then we'll deal

21   with it that way.  But I'm going to impose the conditions and

22   I'm going to do it orally.

23             All right.  First of all, I'm going to impose a

24   personal appearance bond of $300,000.  Now, Mr. Fitzpatrick,

25   that doesn't mean you have to post any money in order to remain

1    free, but it means that if you violate any of the conditions of

2    supervised release, you'll be immediately arrested, of course,

3    but you'll also be indebted to the government in that sum.  And

4    that was previously imposed by the magistrate judge, as I'm

5    advised.  But I want to reimpose that.

6         He will be subject to pretrial services supervision.

7    He may not obtain a new passport, and he has to surrender -- do

8    you have a passport, Mr. Fitzpatrick?

9         THE DEFENDANT:  No, Your Honor.

10        THE COURT:  All right.  You may not obtain any new

11   passport or travel documents.  Your travel is going to be

12   restricted to the Southern District of New York and the

13   Eastern District of New York, which is really Manhattan,

14   Statten Island, Long Island, I've forgotten where else.  But it

15   doesn't involve the capital of New York.

16        MR. KATZ:  That's correct, Judge.  It involves all the

17   counties in New York City, Long Island, as you mentioned, as

18   well as some northern counties of Rockland, Orange, and Duchess.

19        THE COURT:  All right.

20        MR. KATZ:  I'm sorry, Judge, if I may.  As far as --

21        THE COURT:  I said the Southern District of New York,

22   the Eastern District of New York, and the Eastern District of

23   Virginia.  Aren't those covered by what you've said?

24        MR. KATZ:  Yes.  I was just -- you asked about what was

25   included in the Southern District.  I just wanted to let you

1    know which counties --

2           THE COURT:  They're all in the Southern or

3    Eastern District?

4           MR. KATZ:  Correct, Judge.

5           THE COURT:  And the Eastern District of Virginia, which

6    includes this Eastern District.  It does not include Maryland,

7    it does not include West Virginia, and it does not include

8    Western Virginia.  He's limited because he has counsel here.

9    Ms. Ginsberg is his counsel, so he may be traveling here to see

10   her.  He certainly may do that.

11          Here we are.  I have it.  I see what you mean.

12   Duchess, Sullivan, Orange, Rockland, Westchester, and then all

13   of the counties in Manhattan, Statten Island, Queens, and so

14   forth.  And Long Island, Nassau, and Suffolk.

15          All right.  Let me continue.  He may not have any

16   contact with victims, witnesses, co-defendants, or

17   co-conspirators.  No, that's a fairly vague restriction.  How is

18   that going to be enforced?  I don't have a list.  Do we have a

19   list of witnesses, victims, and co-defendants?  The answer is

20   no.

21          MR. HAGHIGHAT:  Well, there is a list of BreachForums'

22   users.

23          THE COURT:  Yes.

24          MR. HAGHIGHAT:  So there is a discrete list.  We

25   haven't provided it to the Court --

1          THE COURT:  How can this be enforced without that?  The

2     answer is, it can't.

3          MR. HAGHIGHAT:  Well, certainly we could provide the

4     list, if that is something the Court would prefer.  But I

5     think --

6          THE COURT:  Well, it isn't something that I prefer.

7     He's going to be allowed to be free pending sentencing.  That

8     gives the Court the authority to impose restrictions on his

9     freedom.  The purpose of those restrictions is, first of all, to

10    ensure he doesn't commit any more crimes, and, second, it is to

11    ensure the integrity of any prosecution or ongoing investigation

12    or anything of that sort.

13         I don't make these up.  I listen to what the parties

14    suggest and then decide whether to impose them.  The only

15    problem I have with that one is, I don't know how it's

16    enforceable if these people are not identified.  In many cases I

17    know who the witnesses and co-conspirators are, and I can tell

18    them:  You can't talk to John, you can't do this.  But I have a

19    hard time knowing that about this.

20         MR. HAGHIGHAT:  Your Honor, in this context it would be

21    based on online monitors that people use on BreachForums, and

22    that's how Mr. Fitzpatrick knows them.

23         THE COURT:  All right.  Well, then, if that's what

24    you're going to rely on, then he can't use a computer unless

25    it's monitored.  And if he uses a computer that's monitored and

 1    that monitoring reflects that he's talking to somebody you think

 2    he shouldn't talk to, then you have to come to court.

 3            MR. HAGHIGHAT:  Yes, Your Honor.

 4            THE COURT:  Or deal with Mr. Katz.

 5            MR. HAGHIGHAT:  Yes, Your Honor.  And I think that's

 6    one of the conditions that --

 7            THE COURT:  I will leave no contact with any victims,

 8    witnesses, co-defendants, or co-conspirators, but I leave it

 9    knowing that it is in some respects fatally vague.

10            On the pornography side, many of these images are of

11    young people who are now adults.  Some of them aren't.  Some of

12    them are identified.  He can't have contact with any of them.

13    But I assume that you will monitor his use of any computer such

14    that you will know.

15            I'm going to leave that in here, but -- and I will tell

16    you, Mr. Fitzpatrick, you can't talk to any co-conspirators, you

17    can't talk to people that you used to communicate with to commit

18    these crimes.  You cannot do it.  And you cannot talk to any

19    victims, either, of any of the crimes.

20            So I am going to impose that, but I have disclosed that

21    I'm concerned about how that can be effected.

22            Next, submit to mental health testing, treatment as

23    directed by pretrial services.  That's okay.  Not use or

24    unlawfully possess a narcotic drug or other controlled

25    substance.  That's fine.  Unless prescribed by a licensed

1    medical practitioner.

2         Not to possess any personal identification information

3    of others, including at any place of employment.  Is he

4    employed, Mr. Katz?

5         MR. KATZ:  No, Your Honor.

6         THE COURT:  All right.  But if he goes to be employed,

7    he can't do anything on those computers unless they're

8    monitored.  And he can't use the personal information of others.

9         He can't open new lines of credit, bank accounts,

10   crypto currency accounts, and credit card accounts without prior

11   approval.  I'll maintain that one.

12        Maintain or actively seek employment or enroll in an

13   educational or vocational program.  Does he intend to do that,

14   Mr. Katz?

15        MR. KATZ:  Your Honor, based upon his treatment thus

16   far, that hasn't been practicable.  But he certainly will if

17   he's capable.

18        THE COURT:  Well, it's a condition here, so he has to

19   do it.  But I think I'll change it to say, at the discretion of

20   the probation office or pretrial officer he has to maintain or

21   actively seek employment.

22        And, of course, he cannot access the BreachForums

23   website or any related websites.  And he shall have no knowing

24   contact with BreachForums users or co-conspirators unless

25   supervised by counsel.  Which counsel?

1          Is that you, Mr. Katz?  Do you anticipate he will be

2     doing that?

3          MR. KATZ:  He will not, Judge.

4          THE COURT:  Yes.  I don't know why that condition is

5     here.  I think it's already covered in, "he shall have no

6     contact with any victims, witnesses, co-defendants, or

7     co-conspirators," period.  And if there's any doubt about

8     whether someone falls into that category by either you,

9     Mr. Katz, or by the government, you-all need to address that

10    promptly.

11         MR. HAGHIGHAT:  Your Honor, I think there were

12    conditions imposed by the magistrate in the Southern District of

13    New York and then additional conditions imposed by

14    Judge Fitzpatrick here.  I think that's why there are two lines.

15    I think the point of the second one is to make it clear, when we

16    say co-conspirators, we're referring to BreachForums users.

17         THE COURT:  All right.  I'll leave that one.  And I'm

18    going to add the condition that the probation office has

19    recommended; that is, that he shall not access a computer and/or

20    the internet unless a computer monitoring program has been

21    installed by the pretrial services office.

22         That means he can't go on the internet unless he does

23    so on a device that is monitored.  He shall consent to the

24    installation of computer monitoring software on any computer to

25    which he has access, and the pretrial services officer will do

1    that and supervise that.  And the software used may restrict

2    and/or record any and all activity on the computer, including

3    the capture of keystrokes, application information, internet use

4    history, email correspondence, and chat conversations.

5         And this condition also includes that the defendant

6    shall not remove, tamper with, reverse engineer or in any way

7    circumvent the software.  And the cost of monitoring is imposed

8    on the defendant.

9         MR. KATZ:  If I may, Judge, with regard to the

10   monitoring, we have no problem with that.  As I think was

11   mentioned earlier, Mr. Fitzpatrick is going through -- is going

12   to therapy.  That is a virtual therapy that he uses a computer

13   for, and I just wanted to confirm in court that monitoring will

14   not actually record his sessions with his mental health

15   treatment.

16        THE COURT:  Do you agree with that, counsel?

17        MR. HAGHIGHAT:  Your Honor, we don't disagree.  It

18   depends, I guess, on what device they want to use for the

19   monitoring.

20        THE COURT:  You're not talking to a sophisticated

21   person here on the use of these devices.  He gets counseling,

22   mental health counseling.  Is that right?

23        MR. KATZ:  Correct, Your Honor.

24        THE COURT:  And is that done live or does he do that by

25   the internet?

1          MR. KATZ:  Internet.

2          THE COURT:  And what does he use in order to

3    participate in these counseling efforts on the internet?

4          MR. KATZ:  A computer.  And he will use only the

5    computer that is subject to monitoring, pursuant to Your Honor's

6    order.

7          THE COURT:  There you have it.

8          MR. KATZ:  But my question is -- not question.  My

9    request is, because he's going through mental health treatment

10   on that device, I just wanted to confirm with the government and

11   with probation that the monitoring does not actually observe him

12   during his mental health treatment on the internet; that it only

13   records where he went, not the substance of his conversations

14   during his mental health treatment.

15         THE COURT:  All right.  What's the government's view on

16   that?

17         MR. HAGHIGHAT:  I don't have an objection to that as

18   long as it's practicable for probation.

19         THE COURT:  Let me ask the probation officer.  In other

20   words, he's going to get counseling via the internet on a device

21   that will be monitored.

22         THE PROBATION OFFICER:  Yes, Your Honor.

23         THE COURT:  But his counsel has argued that his

24   interaction with his treatment providers won't be accessed.

25   What you will have access to is when he does it, to whom he's

1    doing it with, and how he's doing it?

2              THE PROBATION OFFICER:  That's correct, Your Honor.

3              THE COURT:  You won't have access to the substance of

4    the questions he's asked and the answers he gives.  That's what

5    you're saying.  Is that right?

6              MR. KATZ:  Correct, Your Honor.

7              THE PROBATION OFFICER:  Yes, Your Honor.  The computer

8    monitoring simply monitors -- just accesses the websites where

9    he's gone to.  But his sessions with his therapists won't be

10   recorded, it will just show that he accessed the website where

11   he's going.  That's all the computer monitoring does, is access

12   websites he's going to.

13             THE COURT:  All right.

14             MR. KATZ:  We have no objection to that, Your Honor.

15             MR. HAGHIGHAT:  That's fine, Your Honor.

16             THE COURT:  All right.  Any other conditions I should

17   impose on the defendant?

18             MR. HAGHIGHAT:  Yes, Your Honor.  So we have three that

19   we've talked to defense counsel --

20             THE COURT:  Let's finish with the probation officer.

21             What about the child pornography?  You wanted an

22   additional one that says he has no contact with any minors --

23             THE PROBATION OFFICER:  With any minors, unless he's

24   with another adult that's been approved by pretrial services or

25   probation.

1          MR. KATZ:  Your Honor, if I may, he does have a sibling

2     under that age.  I just ask that his sibling not be included on

3     that list.

4          THE COURT:  He has a sibling under age 18 who lives

5     with him?

6          MR. KATZ:  Yes, Judge.

7          THE COURT:  Should we exclude that?

8          THE PROBATION OFFICER:  I think that's okay,

9     considering he's living with his parents, I believe.

10         THE COURT:  Well, do his parents know about the child

11     pornography possession crime?

12         MR. KATZ:  Yes, Your Honor.  His father is in court

13     today, and I know also that his mother is very well aware of it.

14         THE COURT:  All right.  Well, then, presumably he won't

15     have any unsupervised contact with his sibling other than --

16     that his parents won't know about, is what I'm getting at.

17         MR. KATZ:  That's right.  They all live in the same

18     house, Your Honor.  I don't want it to be a situation where his

19     parents leave the house, he's with his brother, and that's

20     somehow a violation of his supervised release.

21         THE COURT:  But I think it is a condition that he not

22     have any contact with other minors unless it's supervised by an

23     adult who is knowledgeable about the offense and so forth.

24         MR. KATZ:  And that would include his parents.  His

25     parents are aware of the situation.

 1          THE COURT:  Yes.  Yes, of course he may have contact

 2    with his parents.  The parents aren't minors.

 3          MR. KATZ:  No.  I'm sorry, Your Honor, what I meant

 4    was, his parents could be the adults who could supervise that

 5    type of conduct.  They're aware of the charges, they're aware of

 6    his plea, and they're aware of the situation.

 7          THE COURT:  Yes.  Yes, I agree with that.

 8          Is that a problem with probation?

 9          THE PROBATION OFFICER:  No, Your Honor.

10          THE COURT:  Anything else?  Let's go back to the

11    government.

12          MR. HAGHIGHAT:  Yes, Your Honor.  So the first

13    condition, the defendant shall not access any websites or

14    accounts focused on breached, leaked, or stolen data, computer

15    hacking, security research, malware, computer programming,

16    domains, cyber crime, online obfuscation, or computer

17    networking, without prior approval of probation.

18          THE COURT:  All right.  Just a moment.

19          (OFF THE RECORD.)

20          THE COURT:  Go ahead.  Next.

21          MR. HAGHIGHAT:  With regard to that, the one difference

22    between my email and what I just read is defense asked that we

23    change it from "relating to," and then that long list of

24    "focused on," to avoid confusion about whether he could read,

25    like, CNN.com, where there may be some news about something like

1    this.

2           The second condition, the defendant shall not use any

3    tools for obfuscating his identity, such as virtual private

4    networks, or VPNs, the onion router, or Tor, or proxies.

5           Shall I go to the next condition?

6           THE COURT:  No, stop there.  Any objection to that one?

7           MR. KATZ:  No objection to either of the first two, as

8    was just related to the Court.

9           THE COURT:  All right.  Next.  And I'll adopt those and

10   include those.

11          MR. HAGHIGHAT:  Thank you, Your Honor.

12          The third is, the defendant shall not create, register,

13   or rent any new websites, domains, servers, or computer

14   infrastructure associated with the operation of websites.

15          THE COURT:  Associated with the what?

16          MR. HAGHIGHAT:  Operation of websites.

17          THE COURT:  Just a moment.  I'm not sure I know what

18   that means, associated with the operation of websites.

19          MR. HAGHIGHAT:  In order to host the website, you often

20   need to register domains or rent servers or do other

21   computer-related items.  And what we're saying is, he can't

22   create, register, or rent any infrastructure that could help

23   with operating a website.

24          THE COURT:  All right.  Any problem with that?

25          MR. KATZ:  No, Your Honor.

1            THE COURT:  All right.  I'll impose that.  Next?

2            MR. HAGHIGHAT:  Those are the only three, Your Honor.

3            THE COURT:  All right.  I'll impose all of those that

4    have been added without objection.  Anything further to be

5    accomplished today?

6            We do need to have Mr. Fitzpatrick come to the podium.

7    I'll impose the bond oath again today.

8            Mr. Fitzpatrick, come to the podium.  I'm going to have

9    the deputy clerk administer an oath to you that makes clear that

10   you will abide by all of these conditions, including the

11   $300,000 bond that you've already had imposed on you.

12           COURTROOM CLERK:  You do acknowledge yourself indebted

13   onto the United States of America in the sum of $300,000, upon

14   the condition that you appear before this court at such time as

15   the court may direct, to abide the judgment of the court, and do

16   not part without leave of court, so help you God?

17           THE DEFENDANT:  I do.

18           THE COURT:  And it's very important, Mr. Fitzpatrick,

19   that you abide by all of the conditions that we've reviewed

20   today.  Do you understand those?

21           THE DEFENDANT:  I do, Your Honor.

22           THE COURT:  All right.  Anything further in this matter

23   today on behalf of the government?

24           MR. HAGHIGHAT:  Yes, Your Honor.  Just for the record,

25   there's also been a consent order of forfeiture --

```
1              THE COURT:  I've signed it.

2              MR. HAGHIGHAT:  Okay.

3              THE COURT:  Anything else on behalf of the defendant?

4              MR. KATZ:  No, Your Honor.

5              THE COURT:  All right.  Does the probation officer have

6    anything further?

7              THE PROBATION OFFICER:  No, Your Honor.

8              THE COURT:  I thank counsel for your cooperation, and

9    court will stand in recess until 9 o'clock tomorrow morning.

10             (Off the record at 6:34 p.m.)

11

12

13

14

15

16             CERTIFICATE OF OFFICIAL COURT REPORTER

17

18             I, Rebecca Stonestreet, certify that the foregoing is a

19   correct transcript from the record of proceedings in the

20   above-entitled matter.

21

22

23   _____//Rebecca Stonestreet_____         __4/24/24_____

24   SIGNATURE OF COURT REPORTER                  DATE

25
```

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*